UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DANIEL MARTINEZ, *et al*,           §
                                    §
        Plaintiffs,                 §
VS.                                 §        CIVIL ACTION NO. 2:13-CV-178
                                    §
NUECES COUNTY, TEXAS, *et al*,      §
                                    §
        Defendants.                 §

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants' Motion for Summary Judgment on the Defenses of Qualified and Official Immunity (D.E. 48), filed by Nueces County Sheriff's Deputy Ian Rosales and Nueces County Deputy Constables Nate Perez, John Esparza, and Edward F. Day, II (collectively "Defendants"), to which Plaintiffs Daniel Martinez, Rita Martinez, and Jose Martinez (collectively "Plaintiffs") have responded (D.E. 64), and Defendants have replied (D.E. 67). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. Factual Background

### A. Uncontroverted Facts

On or about June 19, 2011, Plaintiffs were throwing a graduation party at their home at 1404 Canales in Robstown, Texas. When uninvited guest Pedro Villagomez became unruly and started causing trouble, Plaintiffs asked him to leave. Villagomez tried to hit Plaintiff Daniel Martinez ("Daniel"), but Daniel stopped him and knocked him

down. Daniel's son-in-law then began fighting with Villagomez. Eventually, Villagomez left the party and called the police.

Shortly thereafter, Defendants responded to a report of an assault at a party at 1404 Canales. They made contact with Villagomez, who was bleeding from his hand and had visible swelling to his face. He informed Defendants that he had been assaulted at a party down the street and provided a description of his attackers. Defendants went to the house at 1404 Canales and made contact with Plaintiff homeowners.

Eventually, Defendants arrested Daniel and his wife, Plaintiff Rita Martinez ("Rita"), who were both charged with resisting arrest, felony assault on a police officer, and interference with a peace officer. Those charges were later dismissed. Their son, Plaintiff Jose Martinez, AKA Jose Bustos, ("Jose")—a minor at the time—was also arrested and spent between three and five months in jail. What happened between Defendants' arrival at Plaintiffs' home and Plaintiffs' eventual arrests is heavily contested.

### B. Plaintiffs' Version of Events

According to the sworn declarations submitted by Plaintiffs (D.E. 64-3, -4, -5), shortly after Villagomez left the party, about 19 or 20 police cars arrived at Plaintiffs' home. When Defendants demanded entry, Plaintiffs refused, and Daniel and Jose stood blocking the doorway. When Daniel and Jose asked Defendants to produce a warrant if they wanted to enter the home, Defendants replied that they were the law and did not need a warrant. Defendants pushed Daniel and Jose into the house and sprayed pepper spray into Jose's eyes, then handcuffed Daniel and pepper sprayed, tased, and beat him

while he lay handcuffed on the ground. When Jose saw this happening, he tried to block his father from being hit. Then, fearing that Defendants were going to tase his mother, Jose left his father and stood in front of her. When Defendants told Jose they were going to arrest him, he complied with their request and let them handcuff him and lead him out the front door. Defendants then took Jose to the ground, and with at least four officers sitting on top of him, Defendants began jumping on his back and body and slamming their knees into his neck.

Plaintiffs claim they were wrongly arrested and charged, and they have offered their sworn declarations that at no time did any of them strike any Defendant, resist arrest, or do anything other than assert their right to prevent Defendants from entering their home.

### C. Defendants' Version of Events

According to the sworn affidavits submitted by Defendants (D.E. 48-10, -11, -12), when Defendants arrived at Plaintiffs' residence, they noticed several individuals matching the description of Villagomez's attackers, including a black male in a white shirt with green writing who was breathing heavily and perspiring profusely, later identified as Pedro Mercedes ("Mercedes"). Defendant Esparza repeatedly ordered Mercedes to approach him, but Mercedes did not obey. Instead, Daniel told Mercedes to run inside the house, which he did, slamming the door in Defendants' faces. Esparza attempted to open the door, but Daniel ran up and physically blocked Defendants' attempt to enter the house. Daniel was told several times to move out of the way, but he refused to obey and continued to block the door. Defendants Perez and Esparza informed

Daniel that they were going to place him under arrest and told him several times to give them his hands, but he refused to comply. When Esparza attempted to place Daniel under arrest, Daniel began moving his hands in an aggressive manner, at which time Defendant Rosales pepper sprayed him. Daniel then ran inside the house, and Perez and Esparza followed him inside in order to arrest him and Mercedes.

Upon entering the house, Esparza was tackled by Plaintiff Jose. After another physical struggle, Jose was taken into custody. As Defendants attempted to escort Jose outside, several individuals surrounded and grabbed at them, and Plaintiff Rita struck Rosales several times. There was another altercation with partygoers outside, and Mercedes ran back inside the house. Defendants followed him inside, and Esparza observed Daniel physically resisting Perez's attempts to place him under arrest. During this altercation, Daniel shoved Perez. Perez responded by tasing Daniel, which finally made Daniel comply. Robstown EMS eventually arrived at the scene, where they checked and cleared all three Plaintiffs before Plaintiffs were taken to jail.

## II. Procedural Background

Plaintiffs filed this lawsuit on June 14, 2013, alleging causes of action against Defendants pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1983 for breach of privacy, unreasonable search and seizure, excessive force, and malicious prosecution.[1] Plaintiffs also sue under Texas law for assault and malicious

---

1. Plaintiffs also brought federal claims against Nueces County, Texas, based on its alleged failure to train and supervise the officers and its policies, customs, procedures, or practices that permit or acquiesce in unconstitutional behavior. By written order entered November 26, 2013, the Court granted Nueces County's motion to dismiss and granted Plaintiffs leave to file an amended complaint within 10 days. D.E. 19. Plaintiffs did not file an amended complaint reinstating their claims against Nueces County.

prosecution. Defendants now move for summary judgment on the defenses of qualified and official immunity.

## III. Legal Standard

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified

documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence, . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250–51. The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## B. Qualified Immunity Standard

The doctrine of qualified immunity affords officials protection against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocana Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir. 2005). First, the plaintiff must establish that the defendant committed a constitutional violation under current law. *Id.* Second, the plaintiff must show that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id.*; *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (to avoid summary

judgment on qualified immunity, a plaintiff need not present absolute proof, but must offer more than mere allegations).

### C. Official Immunity Standard

Under Texas law, a government employee is entitled to official immunity for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002). A government employee must "conclusively establish" each of these elements in order to be entitled to summary judgment on the basis of official immunity. *Id.*; *see also Ramirez v. Martinez*, 2013 WL 2096364, at *7–8 (5th Cir. May 15, 2013).

To establish good faith, the record must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster*, 92 S.W.3d at 465. Good faith is measured "against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *see also Ramirez*, 2013 WL 2096364 at *8. The test for good faith is substantially the same as the test for qualified immunity. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994); *see also Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007). The main difference, however, is that official immunity does not incorporate the requirement that the right alleged to have been violated be clearly established. *Cantu v. Rocha*, 77 F.3d 795, 808–09 (5th Cir. 1996) (citing *Chambers*, 883 S.W.2d at 657). Rather, Texas' good-faith test "focuses solely on

the objective legal reasonableness of the officer's conduct." *Id.* at 809 (citing *Chambers*, 883 S.W.2d at 656–57).

## IV. Evidentiary Issues

Before considering the substantive merits of Defendants' motion for summary judgment, the Court first notes that Plaintiffs have objected to portions of Defendants' summary judgment evidence. Specifically, Plaintiffs have lodged evidentiary objections to Defendants' Exhibits 3, 4, 5, 6, 7, and 8 on the grounds that these exhibits contain hearsay and are therefore inadmissible under Federal Rule of Evidence 801 and 802. The Court has considered both the evidence proffered and Plaintiffs' objections, and to the extent the Court has regarded portions of the evidence as relevant, admissible, and necessary to the resolution of particular summary judgment issues, it hereby overrules the evidentiary objections. To the extent the Court has not relied on other evidence about which Plaintiffs complain, the remaining objections are denied as moot.

The Court further notes that Defendants have submitted a video of at least part of the events giving rise to this action. The Supreme Court has held that courts may rely on videotape evidence of the events when evaluating a motion for summary judgment where opposing parties tell two different stories. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Unfortunately, the video in this case is not helpful. Although Defendants are correct that it shows a very chaotic scene, the identities of the various individuals in the video are unknown, and it is unclear at what point in the course of the events the video was taken. The Court will therefore disregard this evidence.

**V. Analysis**

    **A. Claims under 18 U.S.C. § 1983**

To obtain relief under Section 1983, Plaintiffs must show that they were deprived of a right under the Constitution or laws of the United States by a person acting under color of law. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir. 1993).

    **1.  Fourth Amendment**

The Fourth Amendment prohibits unreasonable searches and seizures, and the Fifth Circuit has recognized that such constitutional violations may lay the foundation for a Section 1983 claim. *See* U.S. CONST. AMEND. IV; *United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). The Supreme Court has further held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment . . . ." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

    **a. Unlawful Search & Seizure**

Plaintiffs first allege that Defendants violated their constitutional rights "by attempting to detain Plaintiffs in violation of their Fourth Amendment expectation of privacy and guarantee to security from unreasonable search and seizure without reasonable suspicion and/or probable cause." D.E. 1, ¶ 22. Plaintiffs do not address their detention or arrests in response to Defendants' motion for summary judgment, but instead appear to clarify this claim by arguing that it was Defendants' entry into their home

without a warrant that violated their Fourth Amendment rights. Out of an abundance of caution, the Court will address both theories of liability.

### i. Warrantless Entry into Plaintiffs' Home

A warrantless entry into a home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). However, exigent circumstances may exist to justify the intrusion. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990); *United States v. Rico*, 51 F.3d 495, 500–01 (5th Cir. 1995). Under the exigent circumstances exception to the warrant requirement, the Supreme Court has recognized that police officers are not required to obtain a warrant where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, — U.S. —, 131 S.Ct. 1849, 1856 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "The possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence." *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) (citing *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993)). Law enforcement officers may also make a warrantless entry into a home "if they have an 'objectively reasonable basis for believing that an occupant is . . . imminently threatened' with serious injury." *Velasquez v. Audirsch*, 574 Fed. App'x 476, 2014 WL 2978535, at *3 (5th Cir. Jul. 3, 2014) (per curiam) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

In addition to exigent circumstances, police must also have probable cause in order to make a lawful warrantless entry into a residence. *Kirk v. Louisiana*, 536 U.S.

635, 638 (2002). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (collecting cases).

Defendants argue that they are entitled to qualified immunity because they meet both requirements. First, they had probable cause to arrest Mercedes for Villagomez's assault and for evading arrest.[2] Mercedes matched the description of one of Villagomez's attackers—black male in a white shirt with green writing—and he was breathing heavily and sweating profusely when they encountered him. D.E. 48-10, ¶ 5; D.E. 48-11, ¶¶ 3–4; D.E. 48-12, ¶ 5. When Defendants asked Mercedes to approach them regarding Villagomez's alleged assault, Mercedes ran from them and went inside the residence, slamming the door in Defendants' faces. D.E. 48-10, ¶¶ 6–7; D.E. 48-11, ¶ 5; D.E. 48-12, ¶¶ 6–7. Plaintiffs Daniel and Jose then physically obstructed law enforcement's pursuit of Mercedes, and Defendants were unable to ascertain whether Mercedes was armed or posed a threat to law enforcement or to any partygoers inside the house. D.E. 48-10, ¶¶ 7–8; D.E. 48-12, ¶ 8–9. According to Defendants, this created exigent circumstances necessary to follow Mercedes inside the house in order to effectuate his arrest. *Id.*

---

2. "A person commits [assault] if the person: intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE § 22.01(a)(1). "A person commits [evading arrest] if he intentionally flees from a person he knows is a peace officer attempting to arrest him or detain him for the purpose of questioning or investigating possible criminal activity." TEX. PENAL CODE § 38.04(a).

Plaintiffs do not deny that Mercedes was one of the men who assaulted Villagomez at their party, nor do they deny that Mercedes ran inside the house when approached by Defendants. Instead, Plaintiffs argue that because Defendants were looking for Mercedes—and not Plaintiff homeowners—the exigent circumstances exception does not apply. Plaintiffs further argue that even if exigent circumstances did apply based on a "hot pursuit," a warrantless entry would only be constitutional if the purpose was to apprehend a suspect for a "serious crime", and the simple assault here would not qualify. Finally, Plaintiffs maintain that Defendants had no authority to arrest Mercedes because the assault was not committed in Defendants' presence, and the officers had no reason to believe Mercedes would further injure Villagomez. Thus, the required probable cause to arrest Mercedes was lacking.

As a general rule, police may enter a fleeing felon's residence in order to effectuate an arrest if they are in hot pursuit of said felon. *United States v. Santana*, 427 U.S. 38, 42–43 (1976) (holding that a felony suspect in a public place cannot "thwart an otherwise proper arrest" by "retreating into her house"). In Texas, the warrantless entry into a residence to arrest or detain a suspect for a non-jailable offense is not permissible. *Randolph v. State*, 152 S.W.3d 764, 771 (Tex. App.—Dallas, 2004 no pet.) However, if an offense—whether a misdemeanor or a felony—is punishable by confinement and there are exigent circumstances, then it is serious enough to justify the warrantless entry. *Id.* at 771–72.

Based on the uncontroverted summary judgment evidence, the Court finds that Defendants had reasonable suspicion to believe Mercedes had committed the crime of

assault—a jailable offense in Texas—and were therefore justified in detaining him for investigative purposes. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). When Defendants attempted to detain and question Mercedes, they observed him commit the crime of evading arrest—also a jailable offense in Texas—and were in hot pursuit when he ran inside Plaintiffs' residence. *See Waugh v. State*, 51 S.W.3d 714, 718 (Tex. App.—Eastland 2001, no pet.) (suspect committed the offense of evading arrest when he fled into house and shut pursuing officer out of the house); *Winter v. State*, 902 S.W.2d 571, 573–74 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (evading arrest is a jailable offense in Texas and therefore not a "minor offense"). The question therefore remains whether Defendants were justified in entering Plaintiffs' home in hot pursuit of Mercedes, who Defendants believed had committed two Class A jailable misdemeanors.

The Court finds that Defendants' actions were constitutional. *See Waugh*, 51 S.W. 3d at 718 (officer was justified in entering suspect's house in pursuit of suspect, where suspect's "attempt to flee into the house and to shut Officer Irby out of the house created exigent circumstances," and when suspect "attempted to push the door shut before Officer Irby entered the house, he committed the offense of evading detention or arrest"); *LaHaye v. State*, 1 S.W.3d 149, 152–53 (Tex. App.—Texarkana 1999, pet. ref'd) (officers in hot pursuit could enter a residence without a warrant and arrest an offender for evading arrest). In the alternative, if the officers' action were not constitutional, the law on this issue was not clearly established at the time. *Stanton v. Sims*, — U.S. —, 134 S.Ct. 3, 7 (per curium) (officer was entitled to qualified immunity in § 1983 action brought by home occupant because the law was not clearly established that a warrantless

entry to a third party's home, in hot pursuit of a suspect who officer has probable cause to arrest for a misdemeanor, violated the Fourth Amendment protection against warrantless searches and seizures). Defendants are therefore entitled to qualified immunity on this claim.

### ii. Wrongful Arrest

Plaintiffs appear to also assert a claim for wrongful arrest in violation of their Fourth Amendment rights. "The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "When an individual asserts a claim for wrongful arrest, qualified immunity will shield the defendant officers from suit if 'a reasonable officer could have believed the arrest at issue to be lawful, in light of clearly established law and the information the arresting officers possessed. Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) and citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (some internal quotations and alterations omitted)). "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)). As such, the Fifth Circuit has "found that '[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails.'" *Id.* (emphasis in *Wells*).

### a. Daniel Martinez

Daniel was arrested for committing the criminal acts of interference with a peace officer, resisting arrest, and felony assault on a police officer. Daniel has offered his sworn declaration that at no time did he resist arrest or assault any officer (D.E. 64-3); thus, there is clearly a factual dispute concerning whether a reasonable officer could have believed he had probable cause to arrest Daniel for resisting arrest or felony assault on a police officer.

With respect to the charge of interference with a peace officer, under Texas Penal Code Section 38.15, "A person commits an offense if the person, with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). Daniel denies that he told Mercedes to run inside the house, but he does not deny that Mercedes did, in fact, run inside the house. Daniel also admits that he refused to allow Defendants to enter his house without a warrant. "Texas courts have recognized that merely arguing with police officers about the propriety of their conduct, including about whether they have the legal authority to conduct a search, falls within the speech exception to section 38.15." *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (citing *Carney v. State*, 31 S.W.3d 392 (Tex. App.— Austin 2000, no pet.)). In *Carney*, the Texas Court of Appeals reversed the defendant's conviction for interference with public duties "where the defendant's conduct consisted solely of arguing with officers over validity of a search warrant, which resulted in delaying the officers' entry into the home." *Freeman*, 483 F.3d at 414 (citing *Carney*, 31

S.W. 3d at 394, 398). Explicitly recognizing that "[n]one of the armed officers expressly testified that appellant blocked [their] entrance into the house by physical action" and that "there was no evidence that he was up against the door physically preventing entry," the court concluded that the evidence could not support a conviction because merely "arguing with the officers does not constitute an actionable offense." *Carney*, 31 S.W. 3d at 398.

Unlike *Carney*, here Defendants have offered evidence that Daniel "physically blocked their entrance into the residence" (D.E. 48-10, ¶ 9; *see also* D.E. 48-11, ¶ 5; D.E. 48-12, ¶ 7)—a fact that neither Daniel nor his co-plaintiffs controvert. In fact, Plaintiffs admit in their Complaint that Daniel and Jose "stood [in] the entry way so that [Defendants] could not enter their home," and when Defendants tried again to enter the home, Daniel "attempted to close the door" before he and Jose decided "to close the door and lock it." D.E. 1, ¶ 10. Based on this uncontroverted summary judgment evidence, the Court finds that it was not unreasonable for Defendants to believe they had probable cause to arrest Daniel for interference with a peace officer when he physically prevented them from pursuing a fleeing suspect. *See Huang v. Harris County*, 264 F.3d 1141, 2001 WL 822534, at *7 (5th Cir. 2001) (unpublished) (holding that it was not unreasonable for officer to believe that he had probable cause to arrest plaintiff for interference with public duties where plaintiff physically blocked the officer's access to her son (who was suspected of a minor offense) by closing a security gate that stood between the officer and her son). Defendants are therefore entitled to qualified immunity on Daniel's wrongful arrest claim.

### b. Rita Martinez

Rita was also arrested for interference with a peace officer, resisting arrest, and felony assault on a police officer. Rita's sworn declaration states that at no time did she hit any officer with her fist or try to pull away from them when they were attempting to handcuff her (D.E. 64-4); thus, there is clearly a factual dispute concerning whether a reasonably prudent officer could have believed he had probable cause to arrest Rita for resisting arrest or felony assault on a police officer. With respect to the charge of interference with a peace officer, Defendants have offered evidence that Rita interfered with law enforcement's attempt to take her son Jose into custody (D.E. 48-10, ¶ 12), and Rita's declaration does not contradict this evidence. Based on the uncontroverted summary judgment evidence, the Court finds that it was not unreasonable for Defendants to believe they had probable cause to arrest Rita for interference with a peace officer. Defendants are therefore entitled to qualified immunity on Rita's wrongful arrest claim.

### c. Jose Martinez

Jose states that he "spent (3) three months in jail" following the June 19, 2011 incident (D.E. 64-5), and Daniel states that Jose "was released after (2) two months in the annex and three (3) months in immigration" (D.E. 64-3). The summary judgment evidence is unclear regarding *why* Jose was arrested; however, it appears from the Parties' briefing that he was also arrested for interference with a peace officer, resisting arrest, and felony assault on a police officer.

As set forth *supra*, Plaintiffs admit in their Complaint that Jose and his father "stood [in] the entry way so that [Defendants] could not enter their home," and when

Defendants tried to enter the home, Jose and his father decided to close and lock the door. D.E. 1, ¶ 10. In his sworn declaration, Jose also admits that he intentionally stood in front of his father while officers attempted to place his father under arrest. D.E. 64-5. Based on this uncontroverted summary judgment evidence, the Court finds that it was not unreasonable for Defendants to believe they had probable cause to arrest Jose for committing the offense of interference with a peace officer when he attempted to physically prevent them from pursuing a fleeing suspect and from arresting his father. *See Huang*, 2001 WL 822534 at *7. Defendants are therefore entitled to qualified immunity on Jose's wrongful arrest claim.

### b. Excessive Force

Plaintiffs further allege that Defendants used "excessive force and/or deadly force in the course of Defendants' attempted custody of Plaintiffs" and that Plaintiffs "were unlawfully beaten, tased and pepper sprayed." D.E. 1 ¶ 21(b). According to Plaintiffs, "Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable." *Id.*

To establish a Section 1983 claim for excessive force, a plaintiff must demonstrate "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009) (quoting *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of

reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. This requires the Court to look at the totality of the facts and circumstances of the case, including the threat of safety to officers and the public, and whether the suspect is resisting arrest or attempting to flee from officers. *Id.* Moreover, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar Cty.*, 560 F.3d 404, 413 (5th Cir. 2009). Given the lack of bright lines for the Court to follow in making reasonableness determinations with regard to an officer's use of force, such questions often require the input of a jury, particularly when the facts are in dispute. *Id.* at 411.

Defendants argue that they were justified in using force against Plaintiffs and offer their sworn statements and police reports showing that: (1) Daniel physically obstructed officers from apprehending a fleeing suspect, moved his hands in an aggressive manner towards Perez and Esparza, and disobeyed numerous commands from officers; (2) Rita struck Rosales repeatedly while he was attempting to escort her son Jose out of the house; and (3) Jose physically obstructed officers from apprehending a fleeing suspect, attempted to interfere with his father's arrest, and tackled Esparza. D.E. 48-10, -11, -12. Defendants also deny that Plaintiffs suffered any constitutionally sufficient injury.

### i. Daniel Martinez

Daniel's declaration states that he was pepper sprayed, tased, and continuously beaten by Defendants while lying handcuffed on the ground. D.E. 64-3. Accepting this

statement as true, the Court must find such force to be unreasonable and clearly excessive to the need. However, the Court's analysis does not end there. Daniel must also show that he suffered at least some injury as a result of this force in order to establish an excessive force claim under the Fourth Amendment.

Although Plaintiffs allege in their Complaint that they each suffered "serious injuries to their person, including, but not limited to bruising and contusion through their bodies" (D.E. 1 ¶ 13), Daniel fails to offer any summary judgment evidence—either in the form of medical records or his own sworn statement—that he suffered even *de minimus* injury from being beaten, tased, or pepper sprayed. Moreover, Defendants have offered evidence that emergency medical technicians "checked and cleared" Daniel at the scene, he suffered "no visible injuries", and treatment was not needed. D.E. 48-3, p.36; D.E. 48-11, ¶ 13. Daniel does not contradict this evidence.

Numerous courts have found that being tased and/or pepper sprayed, without some long-term effect, is no more than a *de minimus* injury. *See Stanley v. City of Baytown, Texas*, 2005 WL 2757370, at *6 (S.D. Tex. Oct. 25, 2005) (finding red marks left after plaintiff was tased, which required no more than an application of salve, to be no more than a *de minimums* injury). *See also*, *e.g.*, *Parker v. Webber*, 2014 WL 1057189, *7 (M.D. La. Mar. 19, 2014) (granting summary judgment in favor of defendant officers in part because plaintiff was seen by medical personnel after briefly being tased on one occasion and pepper sprayed on another, and he did not offer any evidence that the application of force caused any injuries); *Buchanan v. Gulfport Police Dep't*, 2012 WL 1906523, *9 (S.D. Miss. May 25, 2012) (granting summary judgment in favor of

defendants on plaintiff's excessive force claim in part because it was "not clear that [plaintiff] suffered more than a *de minimis* injury from the tasing" and "the evidence showed that the tasing had little or no effect on him"); *Bibbs v. Jones*, 2012 WL 1135584, *2 (W.D. La. Apr. 4, 2012) (finding that "a period of coughing, even for 'quite some time,' was a temporary effect of limited exposure to pepper spray and constitutes only [] *de minimis* physical injury"); *Luepker v. Taylor*, 2010 WL 2696701, *9 (E.D. Mo. Jul. 6, 2010) ("[T]he Court does not believe that the momentary pain and suffering caused by a [T]aser . . . rises above the level of a *de minimis* injury."); *Brown v. Hubert*, 2009 WL 113398 (M.D. La. Jan. 15, 2009) (defendant officers were entitled to qualified immunity on prisoner's Eighth Amendment excessive force claim where prisoner failed to show that he sustained any injury that required treatment as a result of being sprayed with pepper spray; medical records showed prisoner was examined by a nurse after the incident and had no skin abrasions, drainage, or redness to his eyes, and he also had no irritation or swelling on several subsequent medical examinations); *cf. United States v. Gonzales*, 436 F.3d 560, 572 (5th Cir. 2006) (finding there was sufficient evidence of bodily injury from being pepper sprayed where plaintiff's "mouth was foaming, he complained of stinging pain, and his eyes were swollen shut for at least three hours").

### ii. Rita Martinez

Daniel's declaration states that "the police" knocked Rita down, and "she hurt her leg in the fall." D.E. 64-3. However, Rita makes no mention of this event or of any injury in her declaration, and Defendants have offered evidence that emergency medical technicians "checked and cleared" Rita at the scene (D.E. 48-11, ¶13), which Rita does

not dispute. The only physical contact with police Rita mentions is being handcuffed, but she does not state that Defendants used excessive force in handcuffing her, nor does she offer any evidence that she was injured in the process. Even if she had, "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

### iii. Jose Martinez

Jose's declaration states that Defendants sprayed pepper spray in his eyes and pushed him while he was standing in the doorway of his house with his father in an attempt to keep officers from entering the house. D.E. 64-5. As set forth at Part V.A.1.a.i, *supra*, Defendant Officers were in hot pursuit of a fleeing suspect and were legally justified in entering the residence in order to apprehend him. Jose admits that he physically obstructed officers in these efforts by blocking, closing, and attempting to lock the door, and he further admits that he intentionally stood in front of his father while officers tried to place his father under arrest. Under these circumstances, the use of pepper spray was not clearly or unreasonably excessive. *See, e.g.*, *Stone v. Damons*, 252 Fed. App'x 581, 581 (5th Cir. 2007) (officer did not employ excessive force when he sprayed plaintiff with pepper spray, where plaintiff refused to obey officer's order to exit her car and attempted to roll up window to prevent officer from unlocking her car door). Jose also failed to offer evidence of any injury from the pepper spray, stating only that the pepper spray in his eyes was "very painful." D.E. 64-5. Short-term pain alone is insufficient to constitute more than *de minimis* injury for purposes of an excessive force

claim. *Williams v. United States*, 2009 WL 3459873, *12 (S.D. Tex. 2009) (Even accepting plaintiffs' allegations as true that he suffered "'extreme pain from being kicked and sprayed in the eyes with pepper spray' . . . the plaintiff's excessive force claim fails as it is well-settled in the Fifth Circuit that in order to state a claim for excessive force, the plaintiff's alleged injury, though not required to be significant, must be more than *de minimis.*").

Jose's sworn declaration further states that at least four officers sat on top of him and jumped on his back and body, and one of them slammed a knee into his neck, all while he was handcuffed and complying with their requests. Accepting this statement as true, the Court must find such force to be unreasonable and clearly excessive to the need. However, like his father, Jose does not offer any summary judgment evidence—either in the form of medical records or his own sworn statement—that he suffered any injury from this alleged beating. Moreover, Defendants have offered evidence that emergency medical technicians "checked and cleared" Jose at the scene (D.E. 48-11, ¶ 13), which Jose does not dispute.

In sum, the uncontroverted summary judgment evidence shows that Plaintiffs suffered no injuries, either physical or psychological, from Defendants' use of force. By asserting an excessive force claim resulting in a constitutional violation, it is not necessary for Plaintiffs to show that they were *seriously* harmed by Defendants' actions. *See Wilkins v. Gaddy*, 559 U.S. 34, 35 (2010) (*citing Hudson v. McMillian,* 503 U.S. 1, 4 (1992)). However, at least some injury, however small, must be established to bring an excessive force claim. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992); *see also,*

*i.e.*, *Garza v. Traditional Kickapoo Tribe of Texas*, 79 Fed. App'x 10, 11 (5th Cir. 2003) ("Defendants were entitled to summary judgment on Garza's Fourth Amendment excessive force claim, because he has not provided sufficient evidence to show that he suffered an injury, even an insignificant one."); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (finding no claim where plaintiff sustained no injuries); *Clark v. Watson*, 2013 WL 3984218, *4 (E.D. La. Jul. 31, 2013) ("The complete absence of any injury sustained during the arrest indicates that the 'forceful' force that [Defendants] used was not excessive to the need."). Thus, Defendants are entitled to official immunity on Plaintiffs' excessive force claims.

For the reasons set forth above, Defendants are entitled to summary judgment on all of Plaintiffs' claims arising under the Fourth Amendment.

### 2. Fifth Amendment

The Fifth Amendment only applies to deprivations of life, liberty, or property by the United States or some federal actor. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Because Plaintiffs have not alleged that Defendants were acting under authority of the federal government, Defendants are entitled to summary judgment on Plaintiffs' Fifth Amendment Claims.

### 3. Eighth Amendment

Plaintiffs' reliance on the Eighth Amendment is similarly misplaced. While "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, . . . [t]he constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process

guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Bell v. Wolfish*, 441 U.S. 520 (1979)). Here, Plaintiffs were at most pretrial detainees and not convicted prisoners. Defendants are therefore entitled to summary judgment on Plaintiffs' Eighth Amendment Claims.

### 4. Malicious Prosecution

"'Malicious prosecution'" as such and standing alone, 'is no violation of the United States Constitution,' and thus provides no basis for relief under 42 U.S.C. § 1983." *Ahmed v. City of Houston*, 2014 WL 5460590, *2 (S.D. Tex. Oct. 27, 2014) (quoting *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003)). Still, "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano*, 352 F.3d at 953. While such claims may be made under 42 U.S.C. § 1983, "they are not claims for malicious prosecution and labeling them as such only invites confusion." *Id.* at 953–54.

The Court has addressed Plaintiffs' wrongful arrest claims at Part V.A.1.a.ii, *supra*, and will address their malicious prosecution claims under Texas law at Part V.B.2, *infra*. However, because a cause of action for "malicious prosecution" does not exist under § 1983, Defendants are entitled to summary judgment on this claim.

### B. Claims under Texas Law

#### 1. Assault & Battery

Plaintiffs further allege that Defendants assaulted and battered them in violation of Texas law. "In Texas, the elements of a cause of action for assault and battery are the same in civil law as they are in criminal law." *Almond v. Tarver*, 468 F. Supp. 2d 886, 903–04 (E.D. Tex. 2006) (collecting cases). The Texas legislature has consolidated the common law claims of assault and battery into a single cause of action under the Texas Penal Code labeled "assault." *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Under Texas law, a person commits an assault if the person: "(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ; (2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE. § 22.01(a).

In order for Defendants to be entitled to official immunity on Plaintiffs' assault claims, they must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed" that the decision to tase, pepper spray, beat, and/or handcuff Plaintiffs was justified. *See Chambers*, 883 S.W.2d at 656. Moreover, unlike an excessive force claim under the Fourth Amendment, assault does not require any proof of injury—just an intentional, offensive contact.

### a. Daniel Martinez

Daniel's declaration states that at no time did he strike any Defendant or resist arrest. D.E. 64-3. He further states that he was pepper sprayed, tased, and continuously beaten by Defendants while lying handcuffed on the ground. *Id.* Accepting Daniel's declaration as true, the Court finds that a reasonably prudent officer could not have believed that this conduct was justified.

### b. Rita Martinez

Rita's declaration states that she was handcuffed by Defendants, giving rise to her assault claim. D.E. 64-4. Rita further states that at no time did she hit any officer with her fist or try to pull away from officers when they were attempting to handcuff her. *Id.* However, Defendants have offered evidence that Rita interfered with their attempt to take her son Jose into custody (D.E. 48-10, ¶ 12), and Rita does not contradict this evidence. Based on the uncontroverted summary judgment evidence, the Court finds that Defendants had probable cause to believe that Rita had committed the violation of interference with a peace officer; as such, a reasonably prudent officer would have believed that handcuffing Rita during her arrest was justified.

### c. Jose Martinez

Jose's declaration states that Defendants sprayed pepper spray in his eyes and pushed him while he was blocking the door in an attempt to keep law enforcement from entering the house. D.E. 64-5. Jose further states that at least four officers sat on top of him and jumped on his back and body, and one of them slammed a knee into his neck, all while he was handcuffed and complying with Defendants' requests. *Id.* Accepting this

second statement as true, the Court finds that a reasonably prudent officer could not have believed that beating Jose while he lie handcuffed on the ground was justified.

In sum, the Court finds that Defendants are entitled to official immunity on Rita's assault claim. The Court further finds that Daniel and Jose have set forth sufficient evidence to create a genuine issue of material fact as to whether Defendants assaulted them, and Defendants have failed to show that they are entitled to official immunity on this claim. Accordingly, Defendants' motion for summary judgment is denied on Daniel and Jose's assault claims under Texas law.

### 2. **Malicious Prosecution**

Finally, Plaintiffs claim that Defendants are liable for malicious prosecution because they "instituted criminal proceedings against Plaintiffs with malice and under state law." D.E. 1, ¶ 34. Specifically, Plaintiffs allege that Defendants tendered false information to the prosecution, which caused the prosecution to believe there was probable cause to support the charges against Plaintiffs when there was none. *Id.* ¶ 29.

In Texas, a plaintiff alleging a malicious criminal prosecution claim must establish: "(1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff." *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). "Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. To rebut this presumption, the plaintiff must produce evidence that

the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause." *Kroger Tex. LP v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citation omitted). The malice element may be inferred from a lack of probable cause. *Id.* at 798.

A defendant may assert the defense of official immunity to a suit for malicious prosecution. *E.g.*, *Smith v. Davis*, 999 S.W.2d 409, 413–14 (Tex. App.—Dallas 1999, no pet.). Here, Defendants move for summary judgment only on the "lack of probable cause" element, arguing that a reasonably prudent officer would have believed that he had probable cause to arrest each Plaintiff.

### a. Daniel Martinez

Daniel was charged with committing the criminal acts of interference with a peace officer, resisting arrest, and felony assault on a police officer.  The charge against Daniel for felony assault on a police officer was dismissed due to "insufficient evidence to prove bodily injury" (D.E. 48-3, p.38), and the charges for resisting arrest and interference with a peace officer were dismissed after "a necessary witness failed to appear for trial" (D.E 64-6, p.2). As set forth at Part V.A.1.a.ii, *supra*, a reasonable officer could have believed he had probable cause to arrest and initiate a criminal prosecution against Daniel for interference with a peace officer when Daniel physically prevented law enforcement from pursuing a fleeing suspect. However, unlike claims for false arrest, the Court is unable to find any authority stating that a claim for malicious prosecution under Texas law must fail if there was probable cause for *any* of the charges for which the plaintiff was prosecuted. Daniel has offered his sworn declaration that at no time did he resist arrest or

assault any officer (D.E. 64-3); thus, there is clearly a factual dispute concerning whether a reasonably prudent officer could have believed he had probable cause to initiate a criminal prosecution against Daniel for resisting arrest or felony assault on a police officer.

### b. Rita Martinez

Rita was also charged with interference with a peace officer, resisting arrest, and felony assault on a police officer. The charge for assault on a police officer was dismissed due to "insufficient evidence of guilt beyond a reasonable doubt" (D.E. 48-4, p. 32), and the charge for resisting arrest was dismissed based on "prosecutorial discretion" (D.E. 64-6). It is unclear whether the charge for interference with a peace officer was terminated in Rita's favor.

As set forth *supra*, it was not unreasonable for Defendants to believe they had probable cause to arrest Rita for committing the offense of interference with a peace officer. However, Rita's declaration states that at no time did she hit any officer with her fist or try to pull away from officers when they attempted to handcuff her (D.E. 64-4); thus, there is clearly a factual dispute concerning whether a reasonably prudent officer could have believed he had probable cause to initiate a criminal prosecution against Rita for resisting arrest or felony assault on a police officer.

### c. Jose Martinez

It appears that Jose was also arrested for interference with a peace officer, resisting arrest, and felony assault on a police officer. Plaintiffs have not offered any evidence that a criminal prosecution against Jose was ever commenced, or that the prosecution was

terminated in Jose's favor. However, under Texas law, "for purposes of a civil cause of action for malicious prosecution, a formal charge by indictment or information against the plaintiff is not a requirement for a malicious-prosecution cause of action." *French v. French*, 385 S.W.3d 61, 70 (Tex. App.—Waco 2012, pet. denied). Defendants do not dispute that any pending charges against Jose were dismissed.

As set forth *supra*, it was not unreasonable for Defendants to believe they had probable cause to arrest Jose for interference with a peace officer. However, Jose's declaration states that he never tackled any officer as alleged by Defendants, and he complied with Defendants and let them handcuff him (D.E. 64-5); thus, there is clearly a factual dispute concerning whether a reasonably prudent officer could have believed he had probable cause to initiate a criminal prosecution against Jose for resisting arrest or felony assault on a police officer.

Accordingly, Defendants' are not entitled to official immunity, and their motion for summary judgment is denied as to all three Plaintiffs' claims for malicious prosecution under Texas law.

## VI. Conclusion

For the reasons set forth above, it is hereby **ORDERED** as follows:

1) Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Section 1983 claims pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments;

2) Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff Rita Martinez' claim for assault under Texas law;

3) Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiffs Daniel and Jose Martinez' claims for assault under Texas law; and

4) Defendants' Motion for Summary Judgment is **DENIED** as to all Plaintiffs' claims for malicious prosecution under Texas law.

ORDERED this 5th day of January, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE